**[J-106-2018] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| SHIRETTA JUSTICE, | : | No. 17 EAP 2018 |
| | : | |
| Appellant | : | Appeal from the Order of |
| | : | Commonwealth Court entered on |
| | : | 11/14/2017 at No. 1439 CD 2016 |
| v. | : | reversing the Order entered on |
| | : | 07/19/2016 in the Court of Common |
| | : | Pleas, Philadelphia County, Civil |
| PENNSYLVANIA STATE POLICE | : | Division at N. 1729 September Term |
| TROOPER LOMBARDO | : | 2014 |
| | : | |
| Appellee | : | ARGUED: December 6, 2018 |

**CONCURRING OPINION**

**JUSTICE DOUGHERTY**                                          **DECIDED: May 31, 2019**

I fully join the majority opinion, which reinforces the critical function of the jury. I write separately to acknowledge the importance of sovereign immunity within the context of police work, and distinguish the instant case from circumstances necessitating such protection.

By nature of their employment in law enforcement, the state police necessarily insert themselves into perilous situations where their role is to minimize, if not eliminate, threats of harm to the public safety. State troopers regularly encounter environments rife with the potential for injury to others, including suspected perpetrators and bystanders, and to themselves, which they unquestionably must balance against the potential for greater danger to the public when they take action in such environments. As officers make expedited decisions based on a split-second calculus weighing a myriad of risks, the

assertion of authority, oftentimes accompanied by the use of force, is a day-in, day-out necessity of the occupation.

In such situations, sovereign immunity rightfully prevents the threat of personal liability from factoring into these critical moments of decision-making. By protecting police officers from personal liability for certain acts of force, the immunity affords police modest flexibility to make instantaneous judgment calls. The immunity likewise protects the public from officers that hesitate to take necessary action in the face of a safety threat while they deliberate over the threat of liability. Due to the dire consequences of an officer's hesitation when circumstances require immediate, decisive action, in my view, the use of force by police in such situations is generally expectable, within the scope of employment, and among the most essential government activities provided immunity.

However, I do not advocate for an absolute immunity to protect bad acts even though they may be committed by on-duty police officers. While an emergent situation necessitating an instantaneous judgment call may typically yield an expectable use of force in the interest of public safety, such circumstances do not appear to be within the facts of the case before us.

On review of Trooper Lombardo's conduct, as depicted by the cellphone footage taken by Ms. Justice's stepson and viewed by the jury, it is evident there is no temporal link between Trooper Lombardo's use of force upon Ms. Justice — pushing her against a barrier and twisting her arm behind her in a visibly painful manner prior to handcuffing her — and any perceivable threat to her safety, to her stepson's safety, or to the safety of other motorists. She had already exited her vehicle, removed herself from the expressway, and climbed over the Jersey barriers to a protected embankment. In addition, the footage reveals Trooper Lombardo clearly stating, "I changed my mind," in response to Ms. Justice's inquiry about why she had to exit her car for towing after she

had already enlisted the assistance of friends to remove it at Trooper Lombardo's direction. The jury may well have perceived from Trooper Lombardo's statement that he had time to reconsider his chosen course of action, notably to one that removed Ms. Justice **to** the very location he later deemed necessary to remove her **from** for her safety. The cellphone footage additionally supports a finding Trooper Lombardo stepped outside his authority because, despite his allegations of Ms. Justice's profanity and any intimations her behavior might support an arrest for disorderly conduct, *see* N.T. 3/11/16 at 113-14, 116-17, he restrained and handcuffed her, but did not charge her.[1]

In my view, where, as here, the use of force by a police officer is attenuated from any imminent threat to safety and not incident to an arrest, such force may be considered "unexpectable," and is less likely to fall within the scope of employment.

Nevertheless, the majority does **not** hold Trooper Lombardo's conduct was, as a matter of law, personally motivated, or comprised the use of unexpected force. Rather, as the majority explains, those questions were properly put to the jury. The evidence reasonably supported the jury's conclusion Trooper Lombardo acted outside the scope of his employment.

Justice Todd joins this concurring opinion.

---

[1] I recognize the use of profanity, on its own, would not sustain a charge of disorderly conduct, which additionally requires an intent to cause public inconvenience, annoyance or alarm, or the reckless creation of a risk. *See* 18 Pa.C.S. §5503.